UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Cooley, Incorporated
*Plaintiff*

v.

Carlisle SynTec, Inc.; Ronald Mark
Associates, Inc.; RMA Technologies, Inc.;
Flex Membrane International Corp.; Leslie J.
Satz, in his capacity as Chairman and President of
Ronald Mark Associates, Inc.; Michael Satz,
in his capacity as General Manager of
RMA Technologies, Inc.; John/Jane Does 1-3;
Doe Corporations 1-3.
*Defendants*

C.A. No:     1:17-cv-00084-M-LDA

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN RESPONSE TO ALL DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO COMPEL PARTICIPATION IN FRAMING A DISCOVERY PLAN**

Plaintiff, Cooley, Inc., in the above-captioned action hereby submits this Memorandum of Law in Reply to all Defendants' Objections to Plaintiff's Motion to Compel Participation in Framing a Discovery Plan. Because the arguments made by Carlisle and the RMA Defendants track each other and, with respect to Carlisle, depend on the arguments made by the RMA Defendants, Plaintiff will address both sets of Defendants' Objections in one Reply Memorandum.

Briefly, notwithstanding the Defendants' attempt to put a gentler gloss on it, the simple fact is that the defense in this case has, without any adequate basis, refused to participate in either framing a discovery plan, or participating in discovery—regardless of whether a Rule 26(f) conference is required or not. The exhibits to the Plaintiff's Motion to Compel Participation (Doc 52-2) speak for themselves in this regard, and underscore the need for Court intervention. Simply put, the defense is trying to have it both ways; on the one hand the RMA Defendants claiming in correspondence with Plaintiff's counsel that it will hold the parties' Rule 26(f) obligations hostage

1

until the Plaintiff gives over its formula, (for which no protective order has entered, notwithstanding repeated requests by the Plaintiff. *See*, **Exhibit 15**, Correspondence of October 17, 2017[1]; *see also*, **Exhibits 1, 12** to Plaintiff's (Initial) Memorandum of Law (Doc 52-2)), while on the other hand Defendants claiming that their refusal to conference was in fact compliance, and the parties' Rule 26(f) obligations have been met. As the exhibits appended to Plaintiff's Motion (Doc 52-2) make clear, the former is the case, and the RMA Defendant's attempts in their Objection (Doc 57) to paint its conduct as anything other than obstructionist fall flat. It is precisely this conduct by the RMA Defendants (and Carlisle's complicity) that is causing the delays the RMA Defendants are complaining of in their Objection. *See,* Doc 57, p. 8.

While the foregoing addresses the conduct of both sets of Defendants in this case, Plaintiff feels it is necessary to address some of Carlisle's factual recitations. First, as concerns the deposition of John Greko, that deposition was scheduled for September 29, 2017 upon the suggestion of Carlisle's counsel. **Exhibit 16**, Email correspondence of 7/13/17-7/21/17. The Plaintiff noticed that deposition on July 24, 2017. As the exhibits to Plaintiff's Motion to Compel (Doc 52-2) show, Carlisle did not cancel it until September 14, 2017, based on the RMA Defendants' objections. In response, Counsel for the Plaintiff requested dates in December for Mr. Greko's deposition. No response has been received. Counsel for the Plaintiff again requested dates for Mr. Greko's deposition after the Thanksgiving holiday. **Exhibit 17**, Correspondence of 10/18/17. No response has been received. This poses two possibilities. First, Carlisle wants to participate in discovery, but is allowing the RMA Defendants to dictate the terms of Carlisle's participation. Second, Carlisle does not want to participate in discovery, but through equivocation is attempting to sound like it does. In either instance, Carlisle is hitching itself to the RMA

---

[1] Attachments not included.

Defendants' wagon and improperly refusing to participate in discovery until the Plaintiff discloses its formula.

Additionally, although Carlisle claims that it "responded to [Cooley's] discovery requests on July 14, 2017" (Carlisle's Memorandum (Doc 55), p. 4), that is not entirely accurate. Plaintiff's first request for production of documents sought the employment file for John Greko. Instead of providing a response with any substance, Carlisle asserted a blanket objection to Cooley's request and stated that this information could be obtained through the deposition of Mr. Greko. **Exhibit 18**, Carlisle's Response to Plaintiff's First Request for Production of Documents. As has been clear throughout this discussion, there is little interest on the part of Carlisle in going forward with any discovery, including the deposition of Mr. Greko, whether by its own choice, or in deference to the RMA Defendants' position.

The purpose of a Rule 26(f) conference is for the parties to "consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan". Fed.R.Civ.P. 26(f)(2). Clearly, notwithstanding the attempts by the Plaintiff to achieve those ends, it has not happened. Instead, the defense has been utterly unwilling to participate and now simply and euphemistically calls their intransigence "compliance".

The Defendants' refusal to do anything that would involve participating in the discovery process appears to flow from a misinterpretation of case law from other jurisdictions addressing discovery motions. The Defendants cite a litany of cases which they claim require the Plaintiff to provide its formula prior to any discovery obligations arising on their part. This is not what *any* of the cases cited by the Defendants stand for.

Each of the cases cited by the Defendants stands for the proposition that in the course of *ongoing* discovery *by both parties*, where a plaintiff's designation of a trade secret appears vague or unclear, a court in response to a motion, will generally order a plaintiff to provide a description of the trade secret at issue with "reasonable particularity", or will stay a trade secret defendant's obligation to provide trade secret information until the trade secret plaintiff does so. *See*, MSCI, Inc. v. Jacob, 36 Misc. 3d 211, 214-215 (Sup.Ct., N.Y.Co., 2012) (in the context of ongoing discovery, upon motion to compel, court held that "[m]erely providing defendants with plaintiffs' 'reference library' to establish what portions of their source code" was insufficient, and ordered trade secret plaintiff to identify with "reasonable particularity" which component parts or sequencing of software source code were not either publicly available information, commonly-used algorithms, or third-party licensing, and staying defendant's obligation to disclose trade secrets until plaintiff complied); Hill v. Best Med. Int'l, Inc., 2010 U.S.Dist. LEXIS 62726 at * 14-16 (W.D.Pa. 2010) (in the context of ongoing discovery, where trade secret plaintiff had only made "general allegations and generic references to products" court ordered that defendant would not be compelled to reveal any of its own trade secrets or confidential information pending plaintiff's supplemental discovery responses identifying its claimed trade secrets with reasonable particularity); Englehard Corp. v. Savin Corp., 505 A.2d 30, 33 (Del.Ch. 1986) (where neither plaintiff's complaint nor any other document filed by the plaintiff identified any of the matters which the plaintiff claimed were trade secrets, and plaintiff sought "broad discovery" into defendant's confidential information, court ordered that plaintiff's discovery would be stayed until plaintiff provided its "trade secret statement", and recognizing "the purpose of the [reasonable particularity] requirement is to clarify the issues involved in the dispute so as to assure that there will be no disclosure of an adversary's trade secrets beyond what is necessary for the prosecution

of the litigation") (*citing*, Data General v. SCI Systems, Inc., 1978 Del.Ch. LEXIS 563); DeRubeis v. Witten Techs., Inc., 244 F.R.D. 676, 681 (N.D. Ga. 2007) (recognizing that courts have developed "at least nine different approaches" to the issue of timing of trade secrets identification, and defining "reasonable particularity" as "a sufficient description of the trade secrets it believes to be at issue in this case so that: (1) Plaintiffs are put on notice of Witten's claims; and (2) Plaintiffs can discern the relevancy of any requested discovery on Plaintiffs' trade secrets"); AutoMed Techs., Inc. v. Eller, 160 F.Supp. 2d 915, 925 (N.D. Ill. 2001) (requiring plaintiff to "particularize which of its secrets were allegedly misappropriated" before a third-party witness would be compelled to reveal its trade secrets, however allowing all other discovery to proceed); Dura Global Techs., Inc. v. Magna Donnelly, Corp., 2007 U.S.Dist. LEXIS 89650, at *12-14 (E.D. Mich. 2007) (in the context of ongoing discovery, holding that "[g]eneral allegations of 'software, designs and research' and generic references to three research projects by name are insufficient to identify trade secrets in question", and ordering plaintiff to provide "a particularized trade secret list under seal" prior to permitting plaintiff's discovery of defendant's trade secrets); Del Monte Fresh Produce Co. v. Dole Food Co., 148 F.Supp. 2d 1322, 1325 (S.D. Fla. 2001) (in the context of ongoing discovery, compelling identification of trade secrets related to pesticide and fungicide techniques with "reasonable particularity"—holding that the plaintiff "*need not specify the percentages, but it must tell [the defendant] that Del Monte believes he has misappropriated the percentage of concentration of chemical "X" or that he has misappropriated the process for combining chemicals "X, Y, and Z"*") (emphasis added); Ikon Office Solutions, Inc. v. Konica Minolta Bus. Solutions, U.S.A., Inc., 2009 U.S.Dist. LEXIS 116372, at **8-9, 12-14 (W.D.N.C. 2009) (in the context of ongoing discovery, where trade secret plaintiff's discovery responses "merely refer[] to unspecified 'reports containing lease-end information' and refer[ring] Minolta to

the Complaint, which contains a laundry list of general categories of alleged 'trade secret' information", upon motion for protective order, court stayed discovery from defendant until plaintiff identified its claimed trade secrets with sufficient particularity).

*Not one* of the cases cited by the RMA Defendants stands for the proposition that no discovery can go forward until a trade secret plaintiff produces its confidential formula in its entirety (never mind in the absence of a protective order), or that the parties' obligations to confer under Rule 26(f) are stayed until the Plaintiff does so. To the contrary, in each of the cases cited above, to the extent discovery was halted at all, it had already begun, and was stayed because the trade secret plaintiff did not identify its claimed trade secrets sufficiently in the first instance. Here, the Plaintiff has identified its trade secret very specifically and sufficiently to put the Defendants on notice of Cooley's claims and permit the Defendants to discern the relevancy of any requested discovery on Defendant's trade secrets. *C.f.* DeRubeis v. Witten Techs., Inc., 244 F.R.D. 676, 681 (N.D. Ga. 2007); Del Monte Fresh Produce Co. v. Dole Food Co., 148 F.Supp. 2d 1322, 1325 (S.D. Fla. 2001). Signficantly, in a case which, unlike the other cases cited by the Defendants, dealt with a formula, the Southern District of Florida *did not* compel discovery of Del Monte's formula. Here, as in Del Monte, the Plaintiff has with sufficient particularity told the Defendants that it believes they have misappropriated the process for combining a certain number of chemicals. To the extent the parties will need to prove their claims and affirmative defenses, any further discovery into formulas should be done simultaneously subject to an attorneys' and outside experts' eyes-only protective order following the deposition of John Greko.

The Court in DeRubeis, recognized three policies that support allowing the trade secret plaintiff to take discovery prior to identifying its trade secret. First, the Northern District of Georgia noted notion that a plaintiff has a "broad right to discovery under the Federal Rules of

Civil Procedure". DeRubeis, at 680, *citing*, Kevin R. Casey, Identification of Trade Secrets During Discovery: Timing and Specificity, 24 AIPLA Q.J. 191, 197-199 (1996). Second, "the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating." Id, *citing*, Casey, at 199-201. Third, "if a trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a 'Catch-22'". Id, *citing*, Casey, at 202.

The Plaintiff's suggestion that the deposition of John Greko, PVC product manager for Carlisle SynTec, Inc. be conducted prior to any disclosure of formulas is based on the fact that Mr. Greko's testimony is reasonably calculated to define the scope of the Defendants' formulas and product at issue. *See, e.g.* DeRubeis, at 680 (recognizing that in appropriate cases, a trade secret plaintiff may take discovery prior to identifying its trade secrets). It is anticipated that Mr. Greko's testimony will be of assistance in defining the parameters of trade secret discovery going forward, thereby avoiding protracted motion practice regarding the extent of permissible discovery. Given the nature of the trade secrets at play in this litigation, this is one such case where simultaneous disclosure is appropriate. Here, by analogy, although the Plaintiff knows which of its formulas was misappropriated by the Defendants, and has identified it with reasonable particularity, what is not clear is the range of products based on Cooley's formula the RMA Defendants sold to Carlisle, and for how long the RMA Defendants had been doing so. This is precisely why disclosure of materials related to the parties' respective formulas should be done simultaneously following the deposition of John Greko, and subject to a protective order (requests for which inexplicably the Defendants have repeatedly ignored or rejected). Discovery in this fashion is specifically provided

for in Rule 26(c)(1)(G) and (H). In short, the defense has articulated no coherent basis upon which to oppose Cooley's proposal as to the timing of disclosures of the parties' formulas.

What the Defendants appear to be attempting is to compel Cooley to disclose its formula before any obligation arises on the defense to do so, and in the absence of any protective order, or mutually agreed-upon parameters, notwithstanding Plaintiff's repeated attempts. The strategy is clear; if Cooley is compelled to produce its formula first without a protective order, the defense can then claim that any confidential nature that Cooley's formula may have had is waived. Additionally, compelling Cooley to disclose its formula first offers the Defendants an opportunity to revise their formulas to avoid liability. Although the Plaintiff is not suggesting that counsel would be involved in changing the formula, as discovery will reveal, the types of formulas involved in this litigation are created, adjusted, and memorialized in hard-copy document form much as a recipe would be, and can be easily altered to fit a party's narrative. This is precisely why the Plaintiff has been suggesting throughout that disclosure of the parties' formulas be done simultaneously under a protective order with attorneys' and third-party experts' eyes only provisions.

The Defendants' reference to an affidavit (Doc 46-2) signed by an employee of a third-party compounder, Teknor Apex, is misplaced, and has no bearing on the merits of the parties' arguments for the simple reason that there are multiple compounders which are used by companies such as Cooley and the RMA Defendants. Therefore, the fact that an employee of one compounder states that the product it compounds for the RMA Defendants is different from Cooley's C3 means nothing. In reality, Teknor Apex would be the *last place* RMA would take a competitor's misappropriated formula for compounding as the duplication would be immediately recognizable by the compounder, and the Defendants know that. What the affidavit provided by

the RMA Defendants *does* establish is that the RMA Defendants know *precisely* which formula the Plaintiff alleges has been misappropriated.

In sum, the concern here is not about the Plaintiff crafting its case to fit the evidence from the Defendants.  *See*, RMA Defendants' Memorandum (Doc 57), at 11.  Rather, the very real concern is whether the Defendants will craft their defense around the Plaintiff's formula.  There is simply no other rational explanation for the dogmatic (and incorrect) insistence that the Plaintiff disclose its own formula before the Defendants have any obligation to provide any discovery responses.  It is for the foregoing reasons, as well as those articulated in Plaintiff's Motion to Compel the Defendants' Participation, that the Plaintiff respectfully requests Court intervention to establish the parties' discovery-related obligations, and to compel the Defendants participation in the discovery process.

                                              Cooley, Incorporated
                                              By its Attorneys

                                              /s/ *Michael G. Sarli, Esq.*
Michael G. Sarli, Esq. (#2719)
Per C. Vaage, Esq.    (#7273)
Stephen J. Sypole, Esq. (#8833)
Gidley, Sarli & Marusak, LLP
One Turks Head Place, Suite 900
Providence, RI  02903
Phone: 401-274-6644 / Fax:  401-331-9304
mgs@gsm-law.com
pcv@gsm-law.com
ssypole@gsm-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on  October 24, 2017, a copy of the foregoing document was sent by electronic mail to the following registered participants as identified on the Notice of Electronic Filing (NEF):

Kristina I. Hultman, Esq.
Higgins, Cavanagh & Cooney, LLP
10 Dorrance Street
Providence, RI  02903
khultman@hcc-law.com

Michael J. Lepizzera, Jr.
Lepizzera & Laprocina
117 Metro Center Boulevard
Suite 2001
Warwick, RI 02886
mlepizzera@leplap.com

William W. Flachsbart
Michael R. LaPorte
Flachsbart & Greenspoon, LLC
333 N. Michigan Avenue
27th Floor
Chicago, IL  60601-3901
wwf@fg-law.com
mrl@fg-law.com

Joel B. Rothman
Schneider Rothman Intellectual Property Law
Group, PLLC
4651 North Federal Highway
Boca Raton, FL 33431
Joel.rothman@sriplaw.com

Steve W. Zoffer
Brett W. Farrar
Dickie, McCamey & Chilcote PC
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402
(412) 392-5658
Fax: (412) 392-5367
bfarrar@dmclaw.com
szoffer@dmclaw.com

Murray M. Loecher
175 West 79th Street
New York, NY 10024
loechesq@gmail.com

/s/ *Michael G. Sarli*

cc via email:   Jamie James (Jamie.james@sriplaw.com)